NO. 07-01-0301-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 24, 2002

_____

LAWRENCE AND PAULA CALP, ET AL., APPELLANTS

V.

TAU KAPPA EPSILON FRATERNITY, AN ILLINOIS CORP. ,

ET AL., APPELLEES

_____

FROM THE 55TH DISTRICT COURT OF HARRIS COUNTY;

NO. 2000-18508; HONORABLE SHERRY RADACK, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Appellants Lawrence and Paula Calp, individually and as representatives of the Estate of Tricia Calp; James and Louetta Hollister, individually and as representatives of the Estate of Emily Hollister; Donald and Susan Lanham, individually and as representatives of the Estate of Erika Lanham; Cynthia Flores, individually and as

representative of the Estate of William Flores, and for and on behalf of Kylan A. McEachern, surviving minor child of William Flores; and Dolan and Marilyn Wostal, Jr., individually and as representatives of the Estate of Dolan Wostal, III (hereafter appellants);[1] and Mark and Ginger Bruton, individually and as next friend of Chase Bruton, a minor, and representatives of the Estate of Ted Bruton, deceased (hereafter the Brutons),[2] present this appeal from a summary judgment that they take nothing on their suit against appellees Tau Kappa Epsilon Fraternity, an Illinois non-profit corporation, and Tau Kappa Epsilon Fraternity, Pi Eta Chapter, a Chapter and Unincorporated Association of Tau Kappa Epsilon Fraternity. Tricia Calp, Erika M. Lanham, Emily Hollister, William M. Flores, Dolan W. Wostal, III, and Ted Bruton (hereafter referred to as students) were killed while walking on the shoulder of FM 60 when they were struck by a pickup truck driven by Brandon Kallmeyer in the early morning hours of October 10, 1999. By one point of error, the Brutons contend the trial court erred in granting appellees' motion for summary judgment,[3] and by separate brief, the remaining appellants present five issues, to wit:

---

[1]Original plaintiffs in the trial court.

[2]Intervenors in the trial court.

[3]As allowed by Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970), they contend (1) the no-evidence motion for summary judgment was procedurally deficient; (2) appellees failed to attach any competent summary judgment evidence to support the assumption that the students were social guests and licensees or cite any legal authority or standards to define those terms; (3) appellees failed to cite any legal authority on which to base their claim that the alleged danger of walking on the shoulder of the highway was open and obvious which legally negates "one element of Plaintiffs' claims," and (4) appellees presented no legal authority nor attached any competent summary judgment

2

1.   whether the District Court erred in granting the TKE Fraternity's no-evidence point that it was a social host which owed no duty of care to the Children where Appellants' uncontroverted summary judgment evidence established that the Children were owed a duty of care as invitees of the TKE Fraternity because it is a commercial enterprise which promotes its business with events like the one to which the Children were invited;

2.   whether the District Court erred in granting the TKE Fraternity's no-evidence point that it did not owe the Children a duty of care where Appellants' uncontroverted summary judgment evidence established that the TKE Fraternity engaged in conduct which was "dangerous" and created a foreseeable risk of harm to the Children;

3.   whether the District Court erred in ruling that the TKE Fraternity did not owe the Children a duty of care under the Texas A&M University Student Safety Rules, the TKE Fraternity's own risk-management rules and other expert and lay evidence introduced by Appellants which demonstrated, *inter alia*, that the TKE Fraternity expressly undertook a duty to protect the Children from harm;

4.   whether the District Court erred in ruling that the TKE Fraternity did not owe the Children a duty of care under principles of premises liability where Appellants' summary judgment evidence established, *inter alia*, that the TKE Fraternity exercised control over the shoulder yet failed to reasonably protect the Children, and knowingly sponsored a dangerous event and created a dangerous condition on its property and the adjacent highway; and

5.   whether Appellants' evidence demonstrates that the injury or death was a foreseeable consequence of the TKE Fraternity's misconduct established a genuine issue of material fact as to whether the TKE Fraternity was a proximate cause of this tragedy or relieved from liability by the intervening negligence of Brandon Kallmeyer.

Based upon the rationale expressed herein, we affirm.

---

evidence that "the alleged act or omission of the TKE Defendants was not the proximate cause of death as a matter of law."

Although the claims of the Brutons and the remaining appellants are not identical, because the element of proximate cause is common to all their claims, we will focus our review on causation, and our fact statement will reflect only such summary judgment evidence as is necessary to develop our analysis. On the evening of October 9, 1999, following the Texas A&M University and Baylor University football game, nine students[4] drove to the fraternity party barn on the south side of FM 60 just inside the city limits of College Station to attend a party hosted by the TKE Fraternity Chapter at Texas A&M University. When they arrived, some cars were parked on the south side of FM 60. After the students parked their cars on the north shoulder of FM 60, they walked to the south side of the highway. As they approached the south side of the highway, three of the students walked to the south side of the row of parked vehicles and then walked east toward the party barn on the grassy portion of the shoulder. However, the remaining six students did not walk on the grassy portion of the shoulder but instead, while walking on the eastbound paved shoulder portion of FM 60, suffered fatal injuries when they were struck by a pickup driven by Brandon Kallmeyer,[5] who had fallen asleep while driving home. According to Sergeant Gregory R. Lewis of the Texas Department of Public Safety,

---

[4]The students were from Baylor University and elsewhere.

[5]Although Kallmeyer was also a student at Texas A&M University, the Brutons and other appellants do not contend that he was a member of the fraternity or had attended the party.

4

who investigated the accident, it did not appear that Kallmeyer was impaired by alcohol or drugs.

The Brutons alleged 17 acts of negligence (appendix A) and the remaining appellants alleged 12 acts of negligence (appendix B) contending those acts of negligence were the proximate cause of the accident. Although Brandon Kallmeyer and Texas A&M Pi Eta Housing Corporation were also named as defendants, they were severed from the proceeding and are not parties to this appeal. Presenting three grounds, by their motion for summary judgment, appellees contended that (1) the Fraternity did not owe a duty to the students; (2) alternatively, that the danger of walking on the shoulder of the highway was as open and obvious to the students as it was to the Fraternity, and (3) alternatively, that any alleged act or omission of the Fraternity was not the proximate cause of the fatal accident. Before commencing our analysis, we first set out the appropriate standard of review.

5

## Summary Judgment Standard of Review
## Rule 166a(c)

In reviewing a summary judgment based upon a Rule 166a(b), this Court must apply the standards established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either prove all essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678

6

(Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). When a summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Insurance Co. Of N. Am. v. Security Ins., 790 S.W.2d 407, 410 (Tex.App.--Houston [1st Dist.] 1990, no writ).

**Summary Judgment Evidence**

Although the Brutons objected to a portion of the deposition testimony of Sergeant Lewis, the record does not demonstrate that the objection was presented to nor ruled on by the trial court. Thus, the objection was waived. Roberts v. Friendship Dev. Co., 886 S.W.2d 363, 365 (Tex.App.--Houston [1st Dist.] 1994, writ denied), citing Grand Prairie Indep. School Dist. v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990). Moreover, because neither appellants nor appellees present any issues on appeal challenging any of the

7

summary judgment evidence, we may consider all of the summary judgment evidence in the record. Tex. R. App. P. 38.1(e); McGuire v. McGuire, 4 S.W.3d 382, 385 (Tex.App.--Houston [1st Dist.] 1999, no pet.).

Sergeant Lewis was summoned to the scene of the accident and according to his deposition, the students' cars were legally parked on the shoulder of FM 60. Also, the summary judgment evidence includes his nine-page accident reconstruction report and a second three and one-half page report based in part on his interviews with three of the surviving students, Craig Rotter, a nearby resident, and Ryan Camp, Kallmeyer's roommate, who went to the scene of the accident after receiving a call from Kallmeyer.

By his "Accident Reconstruction Report," Sergeant Lewis described FM 60 as a five lane, two way roadway with a center left turn lane designated with standard roadway markings and a posted speed limit of 65 miles per hour. The roadway was paved asphalt which appeared to be in good condition with an eleven-foot improved paved shoulder designated with a white fog line. The weather was clear, the road surface was dry, and no fog or adverse weather conditions were present; however, because it was dark and the nearest street light was 622 feet to the east of the impact, little ambient light was present. This report also indicates:

> According to a statement provided by Kallmeyer after the accident, he had been returning from dropping off a friend . . . . He advised that he was returning to his dorm room on the Texas A&M campus when he fell asleep, drove onto the shoulder and collided with the pedestrians and vehicles.

8

Among other things, according to a second report,

- Kallmeyer telephoned his roommate and told him that he had fallen asleep before he had the accident;

- three students who walked on the grassy portion of the shoulder and south of the parked vehicles were not injured;

- six students who walked east on the paved portion of the shoulder with their backs to eastbound traffic were killed;

- Toni Hoelscher, a student, reported that when she crossed the road, she saw the headlights of the pickup but it appeared to be approximately two miles away;

- Chase Burton, a student, thought the pickup was "going too fast and never slowed down" and struck at least five vehicles before coming to a stop;

- Lewis found no skid marks indicating that the pickup brakes were not applied;

- Lewis estimated that the pickup was driving within the 65 mile per hour posted speed limit; and

- Craig Rotter, a nearby resident, took Kallmeyer to his residence accompanied by a police officer and spoke with him. Kallmeyer told Rotter he was not certain if he had fallen asleep. According to Rotter, Kallmeyer appeared to be "shaken," but did not appear to have any injuries.

Sergeant Lewis's report concluded as follows:

Upon conclusion of this investigation, it would appear the major contributing factor in this accident was the failure of the driver of the Ford pickup to maintain control of his vehicle due to fatigue thereby driving out of the travel lane and onto the shoulder of the roadway, impacting the parked vehicles and pedestrians. A secondary factor in this accident was the

9

pedestrians walking eastbound on the south shoulder of the roadway with their backs to vehicular traffic traveling eastbound. Had the pedestrians been facing the on-coming traffic, they could have possibly evaded being struck. There is no indication of any impairment of the driver due to alcohol or drugs, however final results for additional tests for THC and Setraline are not available as of this report.

The Brutons described Kallmeyer as a "sleepy driver," and the remaining appellants admit that Kallmeyer was negligent. We will commence our analysis by considering the Brutons' point of error and sub-points and the five issues presented by the remaining appellants in a logical rather than sequential order.

By the argument section of their brief, appellants restate their fifth issue (designated as "C") as follows:

Appellants' evidence established that the TKE Fraternity's misconduct was a proximate cause of this tragedy and that it was not relieved of liability by Kallmeyer's intervening negligence.

Although this issue is fact and evidence intensive, appellants did not reference the record as required by Rule 38.1 (g) and (h) of the Texas Rules of Appellate Procedure.[6] By their brief, appellees moved that appellants' statements of fact not supported by reference to the record be disregarded and submitted their own fact statement supported by references to the record. In reply, appellants attempted to "identify material facts and controlling legal

---

[6]The brief does not contain an index or other reference guide to assist us in locating evidentiary statements that may be cited in the preceeding 38 pages of the brief.

10

arguments" presented by appellees' brief, but elected to stand on their brief and again, appellants' 13-page reply brief did not include references to the record or otherwise address appellees' motion.

Also, the Brutons' brief presents sections entitled (1) Preliminary Statement, (2) Statement of Facts, (3) Argument and Authorities Summary Judgment Standard of Review, (4) Appellants' Status, (5) Common Law Duty of Care, (6) Negligence Per Se, and (7) Open and Obvious; however, the Brutons did not provide this Court with any argument, authority or references to the record in support of their fourth sub-point contending that appellees presented no legal authority nor competent summary judgment evidence that the alleged act or omission of appellees was not the proximate cause of death as a matter of law. Accordingly, the Brutons' fourth sub-point and appellants' fifth issue present nothing for review. City of Midland v. Sullivan, 33 S.W.2d 1, 10 n.6 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.); Wolfe v. C.S.P.H., Inc, 24 S.W.3d 641, 647 (Tex.App.--Dallas 2000, no pet.); TXO Production Co v. M. D. Mark, Inc., 999 S.W.2d 137, 143 (Tex.App.--Houston [14th Dist.] 1999, pet. denied); and Harkins v. Dever Nursing Home, 999 S.W.2d 571, 573 (Tex.App.--Houston [14th Dist.] 1999, no pet.). Moreover, for reasons discussed below, we conclude the trial court did not err in granting summary judgment. Because appellants did not separately brief their multiple claims of negligence regarding the essential element of proximate cause, and do not contend that our analysis of the causation issue should be tailored to specific scenarios, we will conduct our analysis to

11

determine if appellees satisfied their burden of proof to demonstrate they were entitled to summary judgment without making multiple analyses of the element of proximate cause. Dennis v. First State Bank of Texas, 989 S.W.2d 22, 28 (Tex.App.--Fort Worth 1998, no pet.).

The motion for summary judgment appears to be a combination traditional and no-evidence motion for summary judgment. By reference to City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex. 1979), by implication appellees rely on Rule 166a(b) and by general reference also asserted they were entitled to summary judgment under Rule 166a(i), known as a no-evidence motion. Although Rule 166a does not prohibit the filing of a combined traditional and a no-evidence motion, the better practice is to file separate motions. Kelly v. LIN Television of Texas, L.P., 27 S.W.3d 564, 569 (Tex.App.--Eastland 2000, pet. denied); *see also* Roth v. FFP Operating Partners, 994 S.W.2d 190, 194 (Tex.App.--Amarillo 1999, pet. denied). By their motion, appellees asserted there was (1) no evidence that the Fraternity agreed to make conditions on FM 60 safe, and (2) no evidence of obscure danger. However, because the proximate cause (legal cause) ground was not presented as a no-evidence ground, we will apply the standard of review applicable to a traditional motion for summary judgment.

The two components of proximate cause are cause in fact and foreseeability. Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992*)*. Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it harm would

12

not have occurred.  *Id.*  Although proximate cause may be shown by circumstantial evidence, it cannot be established by mere conjecture or guess, but rather must be proved by evidence of probative force.  Summers Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. App.--Houston 1st Dist.] 1995, pet. denied).  Further, a vital fact may not be established by piling an inference upon an inference.  Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp., 435 S.W.2d 854, 858 (Tex. 1968).  Assuming legal duty, a question we need not decide, because the issue of proximate cause is common to all theories of liability asserted, we focus our review on cause in fact and commence our analysis by reviewing five decisions of the Texas Supreme Court, the last four of which upheld traditional motions for summary judgment.

In Bell v. Campbell, 434 S.W.2d 117, 120 (Tex. 1968), individuals were struck by a car and killed while they were helping remove debris that had been left following an accident involving a separate car.  After inquiring whether the intervening cause and its probable consequences were such as could reasonably have been anticipated, the Court held that the deaths were not proximately caused by the negligence of the drivers involved in the first accident.  *Id.*  The Court noted:

> It is clear that Payton, Bell and Bransford would not have been injured but for respondents' negligence, which created the condition that made the second collision possible.  The active and immediate cause of the second collision, however, was an entirely independent agency, Fore. . . .  No one would have been injured if there had not been a second collision.

13

Similar to the facts in the underlying case involving a driver who had fallen asleep, the Court held that causation was negated as a matter of law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). Perez, a highway department employee, was driving a truck pulling a flashing arrow sign to warn traffic of a highway sweeping operation. Perez stopped his vehicle on the road and exited. An approaching van whose driver had fallen asleep struck him causing fatal injuries. Perez's survivors sought to recover for negligence against the sign manufacturer. Although the Court recognized that there may be more than one proximate cause of an event, because the driver of the van that struck Perez was asleep, proper operation of the flashing arrow sign would have had no effect on the sleeping drivers conduct. *Id.* at 471-72. Thus, the Court upheld summary judgment in favor of the manufacturer.

Later, in Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995), the Court considered the point or event at which the causal chain of events becomes too remote to constitute legal causation. After observing that the limits of legal causation were explained in *Lear Siegler*, the Court concluded:

- the connection between the defendant and a plaintiff's injuries may be too attenuated to constitute legal cause; and
- legal cause is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible.

14

Citing *Bell*, 434 S.W.2d at 122, the Court concluded that Allbritton's injuries sustained while fighting a fire with a defective pump were too remotely connected with Union Pump's conduct or pump to constitute a legal cause of her injuries. 898 S.W.2d at 776.

Next, in Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995), the Court held that cause in fact and foreseeability could not be established by mere conjecture, guess, or speculation and that the test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about injury." The Court again cited *Bell* and reaffirmed the rule that cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *Id*.

Finally, in Dallas Co. Mental Health v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998), the question before the Court was whether unlocked doors to a mental hospital from which a mental patient escaped and thereafter committed suicide were the cause of the patient's death. On this point, citing *Union Pump*, 898 S.W.2d at 776, the Court observed that property does not cause injury if it does no more than furnish the condition that makes the injury possible. 968 S.W.2d at 343. The Court concluded that although the patient's escape through the unlocked doors was part of the sequence of events that resulted in his death, the unlocked doors were too attenuated to be said to have caused the death. *Id.*

Although appellants present argument on the element of proximate cause, they do not reference any summary judgment evidence, and instead, primarily focus on the issue

of foreseeability, not cause in fact. Citing Carey v. Pure Distributing Corporation, 133 Tex. 31, 124 S.W.2d 847 (1939), they contend the Fraternity's act or omission need not be the primary cause or even a major cause of the injury, and that it is sufficient if the injury was the natural and probable result of the Fraternity's act or omission. However, *Carey* was concerned only with foreseeability and did not address the requirement of cause in fact. Appellants also rely on Pinkerton's v. Manriquez, 964 S.W.2d 39, 48 (Tex.App.--Houston [14th Dist.] 1997, pet. denied), in which the court discusses foreseeability. However, the court reversed a judgment for the plaintiff because any connection between the orders to Manriquez to assist with the stalled car were "too attenuated to constitute cause in fact" of Manriquez's injuries.

According to the report of one surviving student, the six students who were killed were walking on the paved portion of the shoulder with their backs to traffic while the surviving three students walked on the grassy portion of the shoulder and south of the row of parked cars. Based on Sergeant Lewis's report, we conclude that Kallmeyer did not attend the party and the students cars were legally parked. Lewis's report identifies only two causes of the accident, to-wit: a sleeping driver and the students walking with their backs to traffic. Appellants and the Brutons did not object to the report in the trial court and do not present any issue or argument challenging it as being based upon inaccurate reports, the investigation was incomplete, or the report was otherwise flawed. Because appellees were not required to negate all possible issues of fact that could be presented by appellants, we conclude that appellees met their burden of proof, thereby shifting the

16

burden to appellants to present evidence that would preclude summary judgment. *Clear Creek Basin Authority*, 589 S.W.2d at 678.[7] Paraphrasing the holding in *Bell*, 434 S.W.2d at 120, the active and immediate cause of this unfortunate accident was an entirely independent agency, Kallmeyer, the sleeping driver. Because appellees negated at least one essential element of appellants and the Brutons' claims, they were entitled to summary judgment. *See Randall's Food Markets, Inc.*, 891 S.W.2d at 644. Thus, the trial court did not err in granting summary judgment. Sub-point four and issue five are overruled. Our disposition of the Brutons' fourth sub-point and appellants' fifth issue pretermits our consideration of the remaining sub-points and issues. Tex. R. App. P. 47.1.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Publish.

---

[7]*See* Russell v. City of Bryan, 919 S.W.2d 698, 704 (Tex.App.--Houston [14th Dist.] 1996, writ denied) (holding that burden of proof is on the party claiming affirmative relief).

(1) By failing to provide adequate safe parking for their open party or alternative transportation;

(2) By failing to plan for and control the number of persons invited to this open party and others, given their parking policies and parking and pedestrian safety limitations;

(3) By exercising control over and using the highway shoulder for their benefit and guest parking, despite the dangerous circumstance cause[d] by these actions;

(4) By failing to make their property safe by making other areas of their property available for safe parking, despite their ability to do so;

(5) By failing to follow and/or properly respond to direct complaints about the dangers of directing guests to park and walk on the unlit highway and shoulder;

(6) By failing to heed police warnings concerning the dangers of permitting guests to park and walk on the unlit highway and shoulder;

(7) By failing to heed the direct instructions of a police officer to correct the problem of the cars dangerously parked along the shoulder of the road, in direct violation of Tex. Trans. code §§542.501(l); 545.305(a);

(8) By directing or knowingly permitting their guests to park their vehicles in a manner that violates the law, in direct violation of Tex. Trans. Code §§542.302;

(9) By failing to properly control where guests could park their vehicles;

(10) By failing to provide safe means for visitors to walk from dangerous parking areas to the TKE Defendant's Party Barn;

(11) By failing to provide adequate lighting in grassy areas far off the roadway so that guests could attempt to walk in areas less dangerous than the highway shoulder;

(12) By holding large, uncontrolled, open parties where alcohol was served to children under age 21, and where TKE could not safely plan for or manage the large number of attendees or safely accommodate the parking or provide safe walkways for their guests;

(13) By serving alcoholic beverages at their parties despite knowing that some invitees probably wold have already consumed alcohol and/or would leave the party having consumed alcohol;

(14) By serving alcoholic beverages at their parties despite knowing that their parking situation was a foreseeably dangerous condition;

(15) In failing to provide parking attendants or valet parking for those attending their party;

(16) By violating TKE and FIPG risk management policies and internal procedures Texas A&M rules, and Interfraternity council rules concerning alcohol and open parties on the evening of the incident and on numerous other prior occasions, despite the TKE Defendants' clear knowledge of these rules and policies, investigations into such conduct by Texas A&M University, injuries to students at prior similar events, and internal evaluations that indicated, at a minimum, that risk management was a "glaring issue" at the chapter house; and

(17) By failing to consult or take into account the minimum zoning requirements of College Station regarding off-street pedestrian parking for fraternity houses;

As to the TKE National, by failing to adequately assess, monitor, supervise and control the conduct of the TKE Chapter, despite numerous warning signs concerning and knowledge of the TKE Chapter's dangerous conduct and violations of TKE and FIPG risk management policies and internal procedures, Texas A&M rules, and Interfraternity Council rules concerning alcohol and open parties on the evening of the incident and on numerous other prior occasions. TKE National assessments determined that, at a minimum, risk management was a "glaring issue" at the TKE Chapter and that it was operating almost entirely outside the purported rules and goals of the TKE National, having achieved a reputation for "beer, butts, and boobs." Despite this awareness of the TKE Chapter's dangerous conduct, the TKE

National negligently failed to take necessary actions to control the conduct of its chapter, which was a proximate cause of the deaths of the victims.

1. By failing to provide adequate safe parking for their open party or alternative transportation;

2. By failing to plan for and control the number of persons invited to this open party and others, given their parking policies and parking and pedestrian safety limitations;

3. By exercising control over and using the highway shoulder for their benefit and guest parking, despite the dangerous circumstance caused they these actions;

4. By failing to make their property safe by making other areas of their property available for safe parking, despite their ability to do so;

5. By failing to heed police warnings to resolve their parking problems which were causing a dangerous condition;

6. By failing to properly control where guests could park their vehicles;

7. By failing to provide safe means for visitors to walk from dangerous parking areas to the TKE Party Barn;

8. By failing to provide adequate lighting in grassy areas far off the roadway;

9. By holding, without excuse, large, dangerous open parties as that term is defined by the rules of Texas A&M University, which were designed to protect persons such as plaintiffs where the TKE Defendants could not safely control the event, plan for or manage the large number of attendees, safely accommodate the parking or provide safe walkways for their guests;

10. By violating without excuse Texas A&M student safety rules regarding open parties, and the rules of the Texas A&M Interfraternity Council, the TKE Defendants were negligent per se, such negligence being a proximate cause of the deaths of plaintiffs who were part o the class intended to be protected by such rules. The TKE Defendants were negligent by violating these safety rules and the rules of the FIPG, Inc. risk management policies and internal procedures, which were adopted by the TKE Defendants, concerning alcohol and open parties on the evening of the crash and on numerous other prior occasions despite the TKE Defendants' clear knowledge of these rules and policies, their knowledge about the dangerousness of open parties, investigations into such conduct by Texas A&M University, injuries to students at prior similar events, and internal evaluations that indicated, at a minimum, that risk management was a "glaring issue" at the chapter house;

11. By failing to consult or take into account the minimum zoning requirements of College Station regarding off-street pedestrian parking for fraternity houses;

12. As to the TKE National, violating the safety rules of Texas A&M University through the chapter under its control, and by failing to adequately assess, monitor, supervise and control the conduct of the TKE Chapter, despite numerous warning signs concerning and knowledge of the TKE Chapter's dangerous conduct and violations of applicable safety and risk management rules and policies Texas A&M rules, and Interfraternity Council rules concerning alcohol and open parties on the evening of the crash and on numerous other prior occasions. TKE National assessments determined that, at a minimum, risk management was a "glaring issue" at the TKE Chapter and that it was operating almost entirely outside of the purported rules and goals of the TKE National, having achieved a reputation for "beer, butts, and boobs." Despite this awareness of the TKE Chapter's dangerous conduct, the TKE National

negligently failed to take any actions to properly monitor or control the conduct of its chapter, despite having such power and authority, which was a proximate cause of the deaths of these children.