NO. 07-02-0033-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 26, 2002

_____


POWERHOUSE SERVICES, INC., APPELLANT

V.

BECHTEL CORPORATION, APPELLEE


_____

FROM THE 58TH DISTRICT COURT OF JEFFERSON COUNTY;

NO. A-164,979; HONORABLE JAMES MEHAFFY, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[*]

Powerhouse Services, Inc. presents two issues challenging a summary judgment that Bechtel Corporation recover $113,015.56 as damages and $37,671.85 as court costs and reasonable attorney's fees for breach of a written indemnity agreement. By its first issue, Powerhouse contends the indemnity provision is invalid as a matter of law under the express negligence test and by its second issue, contends that genuine issues of material

---

[*]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

fact exist as to causation and Powerhouse's alleged negligence which the trial court apparently determined as a matter of law.[1]   Based upon the rationale expressed herein, we affirm.

Bechtel, a general contractor, contracted with Mobil Chemical Company[2] to construct an expansion at Mobil's Olefin's Unit. Powerhouse, as subcontractor on the project, entered into a written subcontract with Bechtel.   As material here, paragraph GC-37 entitled "Indemnity" provided:

> SUBCONTRACTOR hereby releases and shall indemnify, defend and hold harmless CONTRACTOR, OWNER . . . from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs, expenses, and losses of whatsoever kind or nature in connection with or incidental to the performance of this subcontract, whether arising before or after completion of the Work hereunder and in any manner directly or indirectly caused, occasioned, or contributed to in whole or in part, or claimed to be caused, occasioned or contributed to in whole or in part, by reason of any act, omission, fault or negligence whether active or passive of SUBCONTRACTOR, its lower-tier suppliers, subcontractors or of anyone under its direction or control or on its behalf.
>
> *   *   *
>
> SUBCONTRACTOR'S aforesaid release, indemnity and hold harmless obligations, or portions or applications thereof, shall apply even in the event of the fault or negligence, whether active or passive, or strict liability of the parties released, indemnified or held harmless to the fullest extent permitted by law, but in no event shall they apply to liability caused by the willful

---

[1]Powerhouse does not present the broad form point which authorizes argument as to all possible grounds upon which summary judgment should have been denied.  *See* Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).

[2]Mobil is not a party to this proceeding.

2

misconduct or sole negligence of the party released, indemnified or held harmless.

Although Powerhouse contends that Bechtel is not entitled to indemnification because the agreement does not satisfy the express negligence test, it did not plead nor assert in its summary judgment response nor does it contend here that the paragraph was ambiguous.

During the course of the work under the contract, Evelyn Jones, a Powerhouse employee, was injured when a valve broke off a fire hydrant when another Powerhouse employee was attempting to tighten it. As a result, Jones was sprayed with a stream of high pressure water and knocked backward. Claiming injuries to her neck, shoulder, and back, Jones filed suit against Mobil and Bechtel accepted the defense of Mobil in accordance with its contract with Mobil. Jones's suit was settled by Bechtel for $75,000. Following its settlement with Jones, Bechtel commenced this action against Powerhouse seeking indemnification for the settlement, its attorney's fees expended in defense, and attorney's fees in prosecuting the action for declaratory judgment. In response to Bechtel's declaratory judgment action, in addition to a general denial, Powerhouse asserted that it invoked the provisions of section 41.007 et seq. of the Texas Civil Practice and Remedies Code and the punitive damages limitations contained therein and alleged its right to a reduction of any dollar verdict which may be rendered in the underlying cause by credit for payments made by other persons or entities. However, Powerhouse did not deny the execution of the contract by verified plea per Rule 93 of the Texas Rules of Civil Procedure.

By its traditional motion for summary judgment, which was supported by 15 written items, Bechtel asserted it was entitled to contractual indemnification from Powerhouse under the contract because Jones was injured while another Powerhouse employee was working on a valve.  Among other exhibits, Bechtel's evidence included (2) a copy of a formal investigation of the incident conducted by Powerhouse; (5) a letter requesting that Powerhouse assume defense pursuant to the contract; (11) a copy of the Memorandum of Settlement in the Jones v. Mobil lawsuit; (12) a copy of a release signed by Jones; (14) a copy of an invoice for attorney's fees; and (15) an affidavit of Michael T. Birdwell.  In response to Bechtel's motion for summary judgment, Powerhouse filed its response to and a cross-motion for summary judgment asserting (1) the indemnity agreement between Powerhouse and Bechtel is invalid under the express negligence requirement of Texas law, and (2) even if the indemnity agreement is enforceable, a fact question existed regarding the negligence or causation question thereby precluding summary judgment.

## Summary Judgment Standard
## of Review

For a party to prevail on a traditional motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  This requirement dictates that when the defendant is the movant, he must conclusively negate at least one of the essential elements of the plaintiff's cause of action.  Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment.

4

Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), the Court set out the standard by which we are to review a summary judgment:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
>
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989).

Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, on appeal, we review the summary judgment evidence of both sides and determine all questions presented, and render judgment the trial court should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999). Greg Lair, Inc. v. Spring, 23 S.W.3d 443, 446 (Tex.App.--Amarillo 2000, pet. denied). Moreover, because neither party presented any objections to the summary judgment evidence in the trial court and none are presented here, we may consider all of the summary judgment evidence in the record. Grand Prairie Independent School District v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990); Calp v. Tau Kappa Epsilon Fraternity, 75 S.W.3d 641, 645-46 (Tex.App.--Amarillo 2002, pet. denied).

## Express Negligence Test

By its first issue, Powerhouse contends the trial court erred in finding that the indemnity provision in Bechtel's contract did not violate the express negligence test set forth in Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705, 708 (Tex. 1987). We disagree. The express negligence requirement is a rule of contract interpretation to be determined as a matter of law. Fisk Elec. v. Constructors & Associates, 888 S.W.2d 813, 814 (Tex. 1994). Thus, we commence our analysis of the matter of law question by reviewing three rules of contract law. First, we note that an express contract arises when the terms are stated by the parties while a contract implied in fact arises from the acts and conduct of the parties, it being implied from the facts and circumstances. *See* Haws & Garrett G. Con., Inc. v.

6

Gorbett Bros. Weld. Co., 480 S.W.2d 607, 610 (Tex. 1972) (holding that whether a contract for indemnity existed should have been submitted to the jury). Second, in construing a contract "the thing of first importance is the language of the contract itself." *See* Gallup v. St. Paul Insurance Company, 515 S.W.2d 249, 250 (Tex. 1974). Finally, the language contained in the contract is to be accorded its plain grammatical meaning unless to do so would defeat the parties' intent. *See* DeWitt County Elec. Co-Op. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999). As material to our analysis, the indemnity section as restated below provides:

> [Powerhouse] shall indemnify . . . [Bechtel] . . . from and against any and all suits . . . claims, demands, damages . . . attorney's fees . . . and losses of whatsoever kind or nature in connection with or incidental to the performance of this subcontract . . . in any manner directly or indirectly caused, occasioned, or contributed to . . . by reason of any act, omission, fault or negligence whether active or passive of [Powerhouse] . . . or of anyone acting under its direction or control of on its behalf.

* * *

> *[Powerhouse's] . . . indemnity . . . shall apply even in the event of the fault or negligence . . . of [Bechtel] . . . to the fullest extent permitted by law*, but in no event shall they apply to liability caused by the willful misconduct or sole negligence of [Bechtel] . . . .

(Emphasis added). Focusing on the language "indemnity. . . shall apply even in the event of the fault or negligence" of Bechtel "to the fullest extent permitted by law," and applying the referenced rules of contract law, we must determine whether this language satisfies the express negligence test.

7

In Fisk Elec. v. Constructors & Associates, Inc., 888 S.W.2d 813 (Tex. 1994),[3] Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705 (Tex. 1987),[4] and Gulf Coast Masonry v. Owens-Illinois, 739 S.W.2d 239 (1987),[5] the Court held the indemnity provisions unenforceable because they did not clearly provide for indemnification for the indemnitee's own negligence. However, the indemnity provisions in *Fisk Elec.*, *Ethyl*, and *Gulf Coast Masonry* did not contain language similar to the language here that the duty to indemnify "shall apply even in the event of the fault or negligence of [Bechtel]."

In *Ethyl*, the Court held that the contractual provision did not expressly provide for indemnity for the negligence of the indemnitee, comparative or otherwise. 725 S.W.2d at 708-09. Unlike the provisions in *Fisk Elec.*, *Ethyl*, *Gulf Coast Masonry*, the indemnity obligation under this contract applies "even in the event of the fault or negligence" of Bechtel. Otherwise stated, Powerhouse had the duty to indemnify Bechtel "notwithstanding" Bechtel's fault or negligence, willful misconduct, or sole negligence excepted. Moreover, the indemnity provision is readily apparent, appearing in larger type than the preceding paragraphs and the title "Indemnity" is capitalized in bold print. Accordingly, we conclude that the indemnity provision does satisfy the express negligence test. Giving the "plain grammatical meaning" to the language "even in the event of the fault or negligence" of

---

[3]*See* indemnity provision, Constructors & Associates v. Fisk Elec., 880 S.W.2d 424, 425 (Tex.App.–Houston [14th Dist.] 1993), *rev'd*, 888 S.W.2d 813 (Tex. 1994).

[4]*See* indemnity provision, 725 S.W.2d at 707.

[5]*See* indemnity provision, 739 S.W.2d at 239.

8

Bechtel, we conclude the provision satisfied the express negligence test. Powerhouse's first issue is overruled.

By its second issue submitted in the alternative, Powerhouse contends a material fact question existed as to causation and its alleged negligence, which the trial court apparently determined as a matter of law. We disagree. As part of its summary judgment evidence, Bechtel submitted the written report entitled "Accident Investigation" conducted and prepared by an employee of Powerhouse, which included unchallenged fact findings, including:

- Powerhouse foreman noticed that the gate valve on M-63 was leaking on January 11 and he placed a yellow caution tag on the valve stating "Bad Valve."

- Powerhouse instructed its fire watches not to use this valve.

- On January 12, between 8:00 and 9:00 a.m., Mobil shut down the Powerhouse fire watch duties on M-63 due to the leaking gate valve.

- On the morning of January 13, the bad valve tag has been removed from M-63. When the injured Powerhouse employee arrived at M-63 to set up for the day's fire watch duties as Ms. Jones was having difficulty in removing the gated-Y, she sought assistance from another Powerhouse employee. As he was attempting to tighten the gate valve with his foot, it broke off.

- Ms. Jones was standing about two feet from the fire monitor as a water stream struck her in the upper body and knocked her down.

After interviewing the injured employee, foreman, and witnesses, the accident investigator for Powerhouse concluded in part that removal of the tag by an unauthorized/unknown person was the root cause of the accident. Also, according to his report, the decision of fire watch personnel to use the monitor valve "while it was leaking at the nipple" was a

9

contributing factor. Powerhouse did not object to the submission of the report as summary judgment evidence or present any summary judgment evidence to the contrary.

Although recognizing that the subcontract requires that Powerhouse's fault or negligence be the triggering event before the duty to indemnify arises, it then proceeds to argue that the elements of negligence including proximate cause were not established by the summary judgment evidence. However, under the applicable clause:

> in any manner directly or indirectly *caused, occasioned,* or contributed to in whole or in part, or claimed to be caused, occasioned or contributed to in whole or in part, by reason of *any act, omission, fault, or negligence* whether active or passive of SUBCONTRACTOR, its lower-tier suppliers, subcontractors, or *anyone under its direction or control or on its behalf*

summary judgment proof of negligence is not essential but, instead, evidence of cause in fact is sufficient to trigger the duty to indemnify. The inspector's unchallenged findings of fact are sufficient to establish "cause in fact" by employees of Powerhouse thereby giving rise to the duty of Powerhouse to indemnify Bechtel. Accordingly, Powerhouse's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Publish.

10