**Regino Juarez SANCHEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38795.**

Court of Criminal Appeals of Texas.

Dec. 8, 1965.

Rehearing Denied Feb. 2, 1966.

Murray J. Howze, Monahans, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder without malice (Art. 802c, Vernon's Ann.P.C.); the punishment, five years.

The facts as shown by the state's evidence reflect that on the night in question, the appellant, while driving his automobile upon state highway #17, betweeen Pecos and Balmorhea in Reeves County, around 8:30 p. m., collided with the rear of an automobile being driven by Ynes Luna. Riding in the automobile with Mr. Luna were his wife and several children, including the deceased, Ruben Luna, six years of age, who was killed in the collision. At the time of the collision the Luna automobile was being driven on its right-hand side of the highway, and it was struck at the left rear by the right front of appellant's automobile.

Sheriff A. B. Nail and state highway patrolman Jack Dean, who observed appellant at the scene after the collision, testified that he was unsteady on his feet, that his speech was incoherent, and that he had the odor of alcoholic beverage on his breath. Each officer expressed the opinion that at such time appellant was intoxicated. Patrolman Dean further testified that when he arrived at the scene appellant approached him and stated that he was the driver of the automobile and was "speeding, running between ninety and ninety-five."

After being placed under arrest, appellant executed a written consent to the giving of a blood specimen. The blood specimen obtained from him, upon being examined at the Department of Public Safety by chemist and toxicologist Wayne Merritt, was shown to contain 0.17% alcohol by weight. The chemist expressed the opinion that the person from whom the blood specimen was taken was intoxicated at the time.

A written statement was also made and signed by appellant on the night of his arrest after having been duly warned by Henry T. Barnett, the person to whom it was made. The statement was introduced in evidence by the state after the court, in a hearing held in the jury's absence, found that the same was voluntarily made.

In the statement, appellant admitted that he was the driver of one of the automobiles involved in the collision and related, in part, as follows:

"I began drinking at noon today with one beer for lunch at Starr's Drive-In in Odessa. Roy Gonzales and I bought two six-packs of beer at Everybody's Food Store in Odessa. We began drinking on this beer as we drove to Pecos. When we got to Pecos, we went to Millie's Bar and drank about three beers from five to seven P.M. After we left Pecos, we had about two or three beers left out of the six-packs. I began driving south on Texas 17 at seventy-five to eighty miles per hour. I came upon a car driving very slow. His tail lights were hard to see. When I did see them, I hit the brakes hard and tried to swerve to the left to avoid hitting him, but I was too close. I came to rest crossways of the left lane. I had several bottles of beer in the car and I threw it across the fence and irrigation ditch which bordered the highway."

Testifying as a witness in his own behalf, appellant denied that he was intoxicated and swore that the cause of the collision was dim tail lights on the Luna car and also the fact that he was blinded by the headlights of an approaching automobile. Appellant stated that, because of the dim tail lights, he was within forty-five to sixty feet of the Luna car before seeing it; that it was traveling partially on the right shoulder; and that he tried to avoid the collision by driving between the two vehicles. Another reason given by appellant for the collision was that the left front tire on his automobile blew out. He also denied telling highway patrolman Dean that he was driving between ninety and ninety-five miles per hour and stated that he was driving between sixty-five and seventy-five miles per hour at the time.

Appellant, in support of his application for a suspended sentence, swore that he had never been convicted of a felony in this or any other state.

In rebuttal, the state called deputy sheriff Gary Ingram, of Reeves County, who testified on direct examination that he knew the reputation of appellant as a law-abiding citizen in the neighborhood in which he resided and that it was bad.

While the witness was testifying on direct examination, counsel for appellant stated:

"Your Honor please, Mr. Ingram resides in this county and the *D*efendant resides in Ector County."

Then on cross-examination by appellant's counsel, the witness was asked and testified as follows:

*"By Mr. Howze:*

"Q What record does he have, Gary? A He's been arrested for drunk driving.

"Q All right. What else? A Child desertion.

"Q What else? A Swindling with worthless checks. I think that concludes it.

"Q What's your information on that? A I talked to the *D*eputies in Odessa.

"Q That's hearsay from some *D*eputy *S*heriff. What else?

\* \* \* \* \* \*

"A Also from the F.B.I. and DPS fingerprint returns.

\* \* \* \* \* \*

"Q (By Mr. Howze) All right. You're willing to base it on that? You're willing to testify that you are

familiar with his reputation as a law-abiding citizen in the community in which he resides? A Yes, sir.

"Q Now, you did not know him until this came up, did you? A That's correct.

"Q You had never heard of him. And all you know, you talked to some Deputy Sheriff and you passed that hearsay on to us and you have read the F.B.I. reports and the DPS reports? A Yes, sir.

"Q And on the basis of that, you tell the Jury that you are acquainted with his reputation in the community in which he resides with reference to being a peaceable and law-abiding citizen? A Yes, sir.

"Q And based on your information and the source of it, his reputation is bad? A Yes, sir."

Appellant then moved to strike the witness's testimony, stating:

" * * * It's perfectly obvious that he does not know, and that any information he has is based on rank hearsay and has no probative value. We ask that his testimony be stricken and the Jury instructed not to consider it for any purpose."

■ In overruling the motion to strike the witness's testimony, the court did not err. It is not necessary that a witness be personally acquainted with an accused in order to speak as to his general reputation which the witness knows. Cox v. State, Tex.Cr.App., 368 S.W.2d 600. The opinion as to one's general reputation in a community is, by necessity, based upon hearsay.

It is insisted that the witness's testimony is inadmissible under the holding in Guajardo, et al, v. State, Tex.Cr.R. 230, 257 S.W. 247. We note that in reversing the conviction in Guajardo the court stated:

"If the state had contented itself with the mere proof that the witness knew the general reputation of the appellants in the respect mentioned in the community in which they lived, and that it was bad, the record might have presented no error * * *."

■ In Henson v. State, 150 Tex.Cr.R. 344, 200 S.W.2d 1007, this court, in distinguishing the case from Guajardo, pointed out that where the appellant—as in the present case—in an effort to impair the witness's testimony elicits the facts complained of as being hearsay, the objection goes more to the weight rather than to its admissibility. This is exactly what we have in the case at bar.

■ Under the record, the witness was shown to be qualified to express the opinion that appellant's reputation as a law-abiding citizen was bad.

■ We overrule appellant's contention that the evidence is insufficient to sustain the conviction because the state did not prove a causal connection between his intoxication and the death of the deceased. In cases of this nature, the existence or nonexistence of such causal connection is normally a question for the jury. Fletcher v. State, 166 Tex.Cr.R. 561, 317 S.W.2d 57. The jury was properly charged with reference to the necessity of a causal connection in the instant case.

■ The proof offered as to the manner and speed with which appellant operated his automobile before the collision was sufficient to support a finding by the jury of a causal connection between appellant's intoxication and the death of the deceased.

The judgment is affirmed.

Opinion approved by the court.