**Faye P. BRADLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10-85-114-CR.**

Court of Appeals of Texas,
Waco.

Dec. 12, 1985.

* Ancillary to: Lee Ross Puckett v. Grizzard Sales, Inc.

Tommy Sheffield, Copperas Cove, for appellant.

Phillip H. Zeigler, Dist. Atty., Gatesville, for appellee.

HALL, Justice.

Pleading not guilty, appellant Faye P. Bradley was found guilty by a jury of the offense of involuntary manslaughter. Punishment was assessed by the jury at confinement in the Texas Department of Corrections for a term of seven years.

In two grounds of error, appellant complains that (1) the trial court erred in commenting on the admissibility and the weight of the evidence, and (2) the evidence is insufficient to prove each element of the offense of involuntary manslaughter. We affirm the judgment.

The record reflects that on September 2, 1984, at approximately 8:40 p.m., a brown Ford automobile covered with dirt struck a woman who was pushing a baby stroller on or near the shoulder of Highway 116 in Copperas Cove, injuring the woman and killing her child. An eyewitness to the accident who had been following the car testified that when the car first turned onto Highway 116 it turned too wide and went onto the shoulder of the road. After following the car for a few blocks, the witness saw what he thought was a body being thrown from the passenger window of the vehicle, and a metallic object flying forward from the car. The car then accelerated, without ever taking evasive action or making an effort to stop. The eyewitness pulled over and flagged down the car behind him, which was driven by a military policeman, and told him to follow the brown automobile. The military policeman pursued the car at a high rate of speed for approximately ten minutes, however, he was unable to keep up and ultimately lost it. He testified that the car was being driven erratically, "weaving all over the road," and that, based on his experience, it appeared that the car was consciously evading him and fleeing from the scene. Although it was around dark, he was able to get close enough to the vehicle to get a good view of it. Both men ultimately identified appellant's vehicle as being the one involved in the accident.

Around 9:00 p.m., Officer Yandell was dispatched to an address given by an anonymous caller who heard a description of the vehicle on a police scanner where she found an automobile parked in front of the house. The hood was still warm, and the car was covered with dirt except for certain spots on the right front bumper. The front portion of the top of the fender and the side of the fender had recently been wiped off. The bumper bore a bluish-white substance. Officer Yandell also noticed that the anten-

na was broken and dented at its base, and was wiped clean. After her examination of the vehicle was completed, some forty to fifty minutes after the accident occurred, the officer approached the residence where she spoke with a woman identified as Mrs. Long. When she asked her to summon the driver of the car and any passengers, Mrs. Long called appellant's name. Subsequently, Mr. Long came to the door, followed by appellant. A discussion with Mr. Long and appellant resulted in a determination that appellant and the Longs had been at the "Moose Lodge" earlier in the evening, and that appellant had driven Mr. Long to his home in her car while Mrs. Long went to buy dinner for them. Mr. Long told Officer Yandell that they had been home for three hours, however appellant expressed surprise at this statement and said, "I thought we left at 9:00." Officer Yandell described Mr. Long as appearing to be intoxicated. She testified that appellant appeared to be "very intoxicated, ... had a very strong odor of alcoholic beverages on her breath ... and [needed] the support of the door or the side of the building in order to help her stand." Officer Yandell also noted that appellant's speech was slurred and that she was unable to maintain her concentration. She concluded that at that time appellant's intoxication would have affected her ability to drive. She also stated that if someone drank four to six beers over a two or two and one-half hour period, their state of intoxication would stay the same or decrease after such a period of time had elapsed.

Officer Molnes also spoke with appellant, and testified that he smelled a strong odor of alcohol. He stated that she seemed upset and slurred her speech. Molnes concluded that appellant was intoxicated to some degree, and that it would have affected her ability to drive. Officer Molnes and Officer Lawrence also testified that, in their opinion, there was no reason why a driver could not have seen an individual on the side of the road, and that there were no skid marks found in the area.

At approximately 10:00 p.m., Officer Levitt interviewed appellant at the police department. He testified that appellant was very upset and that "her breath smelled heavily of an alcoholic beverage." He stated that she was "definitely under the influence of alcoholic beverage," but that he could not say whether she was drunk. Upon questioning appellant, she admitted that she had been at the Moose Lodge, but insisted that she was not drunk. Officer Levitt also examined appellant's vehicle, and stated:

> [I]t appeared as though something had slid over the right front fender and portion of the hood and over past the right front passenger side of the door ... it looked like a portion of the body and left hand slid, because you could see finger marks along the hood and in the dust, or sliding up and over....

In addition, Levitt noticed a "fresh break" on the antenna, "fresh abrased paint" on the right front fender, a "blue substance" adhered to the bumper, and a small "piece of fiber" on the antenna and on the right front wheel well. Furthermore, he stated that the baby stroller in which the victim was riding was blue.

A forensic chemist testified that scrapings of a brown substance taken from the stroller were consistent with paint scrapings taken from appellant's automobile. He also stated that the small amounts of blue fiber taken from the car were consistent with those found in the stroller.

A bartender at the Moose Lodge testified that she served appellant four to five cans of beer from sometime after 5:30 until 8:00 or 9:00 p.m., and that to her best understanding, appellant drank them.

Appellant testified that she had approximately one-half of a beer before she got to the Lodge and at the most three beers overall between 3:00 p.m. and approximately 8:30 p.m. She was not sure exactly when she left the Lodge with Mr. Long and his son, however, she was "absolutely positive" that she did not hit anything on the way home from the Moose Lodge except possibly some pavement bumps, and she saw no one on the road. Mr. Long con-

curred with appellant in her testimony that she did not hit anything. Appellant also testified that sometime after she turned off Highway 116, her glasses broke and Mr. Long drove the rest of the way home. When she got to the Long's house, she had nothing alcoholic to drink. She and her husband testified that the dent in her car was the result of her hitting a mailbox a few days before.

▪ Appellant, in her first ground of error, complains of remarks made by the trial judge regarding the admission of several photographs of appellant's car into evidence. However, no objection was made to the judge's remarks, nor was there a request for instruction to disregard the comment. Thus, any error was waived. *Sharpe v. State,* 648 S.W.2d 705, 706 (Tex. Cr.App.1983); *Marks v. State,* 617 S.W.2d 250, 251–52 (Tex.Cr.App.1981); *Downey v. State,* 505 S.W.2d 907, 909 (Tex.Cr.App. 1974). Appellant's first ground of error is overruled.

▪ Appellant's second ground of error generally asserts that there was insufficient evidence of each element of V.T. C.A., Penal Code § 19.05(a)(2) to convict her of involuntary manslaughter. However, appellant only specifically discusses the insufficiency of the evidence of intoxication and the causal connection between appellant's intoxication and the victim's death. Appellant points out that no intoxilyzer or blood alcohol test was administered, and argues that "with the exception of opinion evidence and favorable evidence by the bartender for the appellant" the "causal connection of intoxication and the incident was not proven beyond a reasonable doubt."

V.T.C.A., Penal Code § 19.05 provides in part:

> (a) A person commits an offense if he:
> (2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual.

In reviewing the sufficiency of the evidence, we will construe the evidence in a light most favorable to the verdict. *Daniel v. State,* 577 S.W.2d 231, 233 (Tex.Cr.App. 1979). The testimony of the bartender that appellant had been drinking, in conjunction with appellant's testimony that she had nothing alcoholic to drink after she arrived at the Long's house, and the opinion testimony of the police officers that appellant was intoxicated, is sufficient to support a finding that appellant was intoxicated at the time of the accident. *Hardie v. State,* 588 S.W.2d 936, 939 (Tex.Cr.App.1979); *Annis v. State,* 578 S.W.2d 406, 407 (Tex. Cr.App.1979); *Rathmell v. State,* 653 S.W.2d 498, 502 (Tex.App. 13th Dist.1983, pet. ref'd). Regarding the issue of causation, it is well settled that in cases of this nature, the existence or nonexistence of causation is normally a question for the jury. *Hardie,* 588 S.W.2d at 939; *Dorsche v. State,* 514 S.W.2d 755, 757 (Tex.Cr.App. 1974); *Sanchez v. State,* 398 S.W.2d 117, 120 (Tex.Cr.App.1965). The jury here was instructed with reference to the necessity of a causal connection. The evidence established that the deceased was alive and healthy shortly before the accident, and according to eyewitnesses was severely injured in the accident. She died a short time later from her injuries. The only reasonable hypothesis is that she died as a result of the collision. *Guerrero v. State,* 605 S.W.2d 262, 264–65 (Tex.Cr.App.1980). Furthermore, the record reflects that appellant's driving was erratic immediately before and after the accident, that she was intoxicated, and that there was no reason why she should not have seen the victims. This was sufficient to support a jury finding on the issue of causation. *Hardie,* 588 S.W.2d at 939; *Dorsche,* 514 S.W.2d at 757; *Sanchez,* 398 S.W.2d at 120. Additionally, although appellant has not discussed or briefed the sufficiency of the evidence regarding the other elements of the offense, we have examined the record and found the evidence sufficient to support the conviction. Appellant's second ground of error is overruled.

The judgment is affirmed.