NO. 07-02-0169-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 14, 2003



______________________________




TEXAS WORKERS' COMPENSATION COMMISSION, APPELLANT



V.



TEXAS WORKER'S COMPENSATION INSURANCE FUND, APPELLEE




_________________________________



FROM THE 127TH DISTRICT COURT OF HARRIS COUNTY;



NO. 98-39523; HONORABLE SHAROLYN WOOD, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

OPINION (2)


 The Texas Workers' Compensation Commission (Commission) presents two issues
challenging a summary judgment that the Texas Worker's Compensation Insurance Fund
(Insurance Fund) be relieved of all liability for worker's compensation benefits to Glenn
Everett, the real party of interest. By its first issue, the Commission contends that the
Texas Workers' Compensation Act (3) abrogates the common law defense of election of
remedies, and by its second issue, contends that Everett did not make an election of
remedies. Based on the rationale expressed herein, we affirm. (4)

Suit by Everett (5) 


 Following injuries to his left arm on December 21, 1995, Everett filed suit against
Jeffery Evans d/b/a The Finished Touch on March 22, 1996, alleging that his injuries were
caused by the negligence of The Finished Touch while he was using equipment provided
by The Finished Touch and sought to recover actual and punitive damages. The first
written notice of injury was received by the insurance carrier on April 19, 1996, which was
followed by notice filed by the insurance carrier for The Finished Touch on April 25, 1996,
asserting that payment of benefits was denied because no injury occurred in the course
and scope of employment and Everett was an independent contractor, not an employee. 
However, by its original answer filed on May 3, 1996, The Finished Touch contended it
was covered by a workers' compensation insurance policy and that Everett's exclusive
remedy was under the Act, not an action for damages based on negligence grounds;
however, the pleading was amended withdrawing the defense that coverage under the Act
was Everett's exclusive remedy. Everett then filed his claim for worker's compensation on
October 16, 1996.

 While his suit was pending and his worker's compensation claim remained
contested, on February 18, 1997, in consideration of the payment to him of $37,500,
Everett signed a five and one-half page Compromise Settlement Agreement and Release
of All Claims which bore the number and style of Everett's suit, by which, among other
things, paragraph 3 released 

 "the Defendant . . . and any and all other persons, firms, parties, and
corporations that might be in privity with them . . . specifically including any
and all claims for breach of contract, breach of warranty, and/or tort, or
otherwise, which were made or could have been made against Defendant as
a result of the Occurrence."


Paragraph 4 provided that the agreement would be a "bar to any prosecution of" claims
and Everett agreed to dismiss his suit with prejudice and to deliver a motion to dismiss and
order dismissing his action with prejudice. As also material here, by paragraphs 5 and 6
of the agreement, Everett agreed not to bring any action at law or in equity based upon the
occurrence and agreed to defend, hold harmless, and indemnify the defendant, "its
assigns . . . insurers . . . or any other persons, entities, parties, or corporations in privity
with them . . . " from all claims, whether in contract, tort, or statute, whether third party
actions, actions in intervention, cross-actions, or otherwise. Then, among other later
provisions, by paragraph 9, Everett represented that he made the agreement "of his own
free will in accordance with his own judgment and after consultation with his attorneys . .
. ." 

Suit by Insurance Fund


 Following the execution of the settlement agreement and payment of
consideration, on November 4, 1997, Everett decided to pursue his claim for worker's
compensation. After the hearing's officer made an award to Everett, the decision was
reviewed and affirmed by an appeals panel. Following this decision, the Insurance Fund
filed suit against Everett on August 18, 1998, seeking, among other relief, to set aside the
decision of the appeals panel, judgment that Everett made an election of remedies, that
he did not suffer any disability, and for costs. Alleging that the decision of the appeals
panel was erroneous because it was not supported by evidence and was an incorrect
application of the law to the facts, the Insurance Fund sought a determination that Everett
did make an election of remedies and that he did not have disability from December 21,
1995, to February 6, 1997. In response, Everett filed an answer which included a general
denial and affirmative defenses of limitations and laches. At a bench trial on the merits on
August 21, 2000, the trial court found that Everett did make a binding election of remedies
when he elected to pursue and settle a claim for damages and that such election barred
his right to receive workers' compensation benefits and signed an interlocutory judgment
based upon its findings. The judgment also directed that the Insurance Fund prepare a
final judgment and that it be sent to the Commission with notice as required by the Labor
Code.

 Following receipt of the interlocutory judgment, the Commission filed its petition in
intervention contending that the decision of the appeals panel was correct because Everett
did not make an election of remedies and filed its traditional motion for summary judgment
contending the same. The Commission did not contend that the compromise and
settlement agreement was voidable because of fraud, accident, or mistake, or that the
insurance carrier's defense that Everett was an independent contractor was not made in
good faith. After the Commission filed its motion, the Insurance Fund filed a competing
motion supported by ten exhibits contending that Everett made an election of remedies
and that it should be relieved of liability. Following submission of the two motions, the trial
court signed a final judgment on December 18, 2001, ordering that Everett's election of
remedies barred his right to receive workers' compensation benefits from the Insurance
Fund and ordering that the Insurance Fund be relieved of all liability for workers'
compensation benefits to Everett as a result of his December 21, 1995 injury. Before we
commence our an analysis, we first set forth the appropriate standard of review.

Summary Judgment Standard


of Review



 For a party to prevail on a traditional motion for summary judgment, he must
conclusively establish the absence of any genuine question of material fact and that he is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). This requirement dictates
that when the defendant is the movant, he must conclusively negate at least one of the
essential elements of the plaintiff's cause of action. Likewise, a defendant who conclusively
establishes each element of an affirmative defense is entitled to summary judgment. 
Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), the Court set out the
standard by which we are to review a summary judgment: 

 1. The movant for summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a matter
of law.

 2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as true.

 3. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.


Once the movant has established a right to summary judgment, the non-movant has the
burden to respond to the motion and present to the trial court any issues that would preclude
summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678
(Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.]
1996, writ denied). Issues which the non-movant contends preclude the granting of a
summary judgment must be expressly presented to the trial court by written answer or other
written response to the motion and not by mere reference to summary judgment evidence. 
 McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues not
expressly presented to the trial court in writing shall not be considered on appeal as grounds
for reversal. Tex. R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a
motion for summary judgment must be presented in writing to the trial court. Casso v. Brand,
776 S.W.2d 551, 553 (Tex. 1989). 

 Where, as here, both sides move for summary judgment and the trial court grants one
motion and denies the other, on appeal, we review the summary judgment evidence of both
sides and determine all questions presented, and render judgment the trial court should have
rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999). Greg Lair, Inc.
v. Spring, 23 S.W.3d 443, 446 (Tex. App.--Amarillo 2000, pet. denied). Moreover, because
neither party presented any objections to the summary judgment evidence in the trial court,
we may consider all of the summary judgment evidence in the record. Grand Prairie
Independent School District v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990); Calp v. Tau Kappa
Epsilon Fraternity, 75 S.W.3d 641, 645-46 (Tex.App.--Amarillo 2002, pet. denied).

Analysis


 Instead of presenting a general point of error or issue as permitted by Malooly Brothers,
Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970), the Commission presents these issues:

 1. Does the Texas Workers' Compensation Act by creating express statutory
rights abrogate the common law election of remedies defense? 


 2. When an injured employee pursues alternative methods of recovery and
receives a no admission of liability settlement from the employer and
continues to pursue timely his exclusive remedy of workers' compensation
benefits, can such a settlement rise to the level of an election of remedies?


For purposes of our analysis, we will consider the"grounds" (6) set out in the Commission's
motion for summary judgment:

 1. Under the "new law" Workers' Compensation Act adopted in 1989, the
Legislature allowed one year to file a worker's compensation claim.


 2. Under Texas Labor Code, section 406.035 stated "except as provided
herein, an agreement by an employee to waive the employee's right to
compensation is void." The defendant could not have agreed in any fashion
not to give up his right to compensation merely by receiving a settlement from
the employer, especially when the insurance carrier, the Plaintiff, was
denying the Claimant's right to compensation.


 3. Under the "new law," the Legislature created the right of a subclaimant for
the first time, and, under Texas Labor Code section 409.009 . . . . Any
person or entity has an independent right as a subclaimant to seek
reimbursement for any services for the workers' compensation insurance
carrier, and if they wish to pursue that right they can.


 4. The four factors, which must all four be met, under the Bocanegra test
were not all shown to have [been] met as a matter of law. Without all four
factors met, an election of remedies has not been made. This right cannot
be taken away by attempting to create an election of remedies, which such
under the new law is not inconsistent or allowing an injured employee a
double recovery.


Because grounds 1 and 3 are not implicated here, we will direct our attention to ground 1
as it relates to issue one and ground 4 as it relates to issue two.

 In support of its first issue, citing section 406.035, the Commission argues because
the Act creates express statutory rights, it abrogates the common law election of remedies
defense. That section provides:

 § 406.035 Waiver of Compensation Prohibited

 Except as provided by this subtitle, an agreement by an employee to waive
the employee's right to compensation is void.


The Commission has not cited any case authority for its position and the issue presents a
question of first impression as applied to these unique facts.

 Although section 408.001 provides that recovery under the Act "is the exclusive
remedy of an employee covered by workers' compensation insurance coverage," before
that provision applies, the injured person must have been an "employee" as defined by the
Act. An "employer" is a person "who makes a contract of hire" and an employee is a person
who works for an employer, excluding independent contractors. Tex. Lab. Code Ann. §§
401.011(18) & 401.012(b) (Vernon Supp. 2003). 

 The Commission's argument incorrectly assumes that the term "waiver" as used in
the statute is synonymous with the doctrine of election of remedies. "Waiver" is commonly
defined "as the intentional release, relinquishment, or surrender of a known right." See
Fisher v. First Nat. Bank of Memphis, 584 S.W.2d 515, 519 (Tex.Civ.App.--Amarillo 1979,
no writ), citing Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). Election of
remedies is broadly defined as the act of choosing between two or more inconsistent but
coexistent modes of procedure and relief allowed by law on the same state of facts. 
Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas, 491 S.W.2d 869, 871 (Tex. 1973). 
Where, as here, the Legislature does not define a term, its ordinary meaning will be
applied. Hopkins v. Spring Independent School Dist., 736 S.W.2d 617, 619 (Tex. 1987). 
As is apparent from considering the definitions of "waiver" and "election of remedies,"
section 406.035 does not abrogate the common law defense of election of remedies. 
Moreover, because a "right" must exist before it can be waived, the uncertainty of Everett's
status as an employee precluded a waiver of compensation benefits by executing the
settlement agreement. Accordingly, taken in the context of this record, the Act does not
abrogate the common law election of remedies defense. Issue one is overruled.

 By its second issue, the Commission argues that where an employee settles a claim
against an employer and thereafter pursues a timely filed worker's compensation claim, the
settlement does not rise to the level of an election. Based on this record, we disagree. The
Commission acknowledges that the insurance carrier disputed Everett's claim as an
employee. Further, the Commission did not seek to avoid the settlement agreement on the
grounds of fraud, accident, mistake, or otherwise, or challenge the good faith of the
insurance carrier in disputing Everett's status as an employee. In deciding this issue, it is
important to consider the chronology of the following events in light of paragraph 5 of the
settlement agreement: 

 December 21, 1995 Injury;

 March 22, 1996 Everett files common law personal injury action;

 April 25, 1996 Insurance carrier disputes status as an
employee;

 October 16, 1996 Everett filed compensation claim; 

 February 18, 1997 Compromise settlement agreement signed and
$37,500 paid to Everett. Also, $2,217.65 paid in
attorney's fees and court costs;

 November 4, 1997 Everett decides to pursue his compensation
claim; record is silent as to why Everett delayed
in pursuing his claim for compensation. 

 

Summarized here, by paragraph 5 of the settlement agreement, Everett also agreed that
he would not bring, commence, institute, nor maintain any claim against The Finished
Touch, its insurers, or others who might be in privity with them. Also, in paragraph 6,
Everett agreed to indemnify and hold The Finished Touch, et al. harmless from claims
based in contract, tort, or statute. Although the Insurance Fund did not contend that the
agreement constituted a "release" of claims, it did contend that it operated as an election
of remedies. 

 In Custom Leasing, 491 S.W.2d at 871, the Court held:

 An election of remedies is the act of choosing between two or more
inconsistent but coexistent modes of procedure and relief allowed by law on
the same state of facts. When a party thus chooses to exercise one of them
he abandons his right to exercise the other remedy and is precluded from
resorting to it.


The Commission contends that the four elements of the doctrine as announced in
Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 848, 851 (Tex. 1980), to-wit: 

 when (1) one successfully exercises an informed choice (2) between two or
more remedies, rights or states of facts (3) which are so inconsistent as to (4)
constitute manifest injustice 


were not established by the summary judgment evidence. We disagree for the following
reasons.

 Exercise of informed choice. In Bocanegra, the Court held that the worker did not
make an informed choice because she was a layman and the medical terms and issues 
were beyond her general understanding. Here, however, Everett made an informed choice
because the terms used in the compromise and settlement agreement are commonly used 
and Everett acknowledged that he signed the agreement "after consultation with his
attorneys." 

 Two or more remedies or rights. Because Everett's status as a employee was
challenged at the time of the agreement, the exclusive remedy provision in section 408.001
and the "opt out" provisions in section 406.034 were not controlling. Therefore, Everett
could have diligently prosecuted his worker's compensation claim or could, as he did, elect
to accept $37,500 in accordance with the compromise and settlement agreement.

 Inconsistent. Unlike a common law action for damages, workers' compensation
benefits are not dependent on a finding of fault. Further, where an injured person is an
employee as defined by the Act, the prosecution of a common law negligence action
against an employer is prohibited under section 408.001. 

 Constitute manifest injustice. Everett signed a contract after consulting with his
attorney by which, among other things, he agreed not to assert any claims arising under
common law, in equity, or statute. Notwithstanding his agreement not to pursue a claim
after he was paid $37,500, Everett pursued his compensation claim. Moreover, a party is
generally not entitled to a double recovery which exists when a party obtains more than one
recovery for the same injury. Waite Hill Services, Inc. v. World Class Metal, 959 S.W.2d
182, 184 (Tex. 1998). 

 We have not overlooked the Commission's argument regarding section 410.253;
however, because courts generally presume that a statute shall operate prospectively only,
Subaru of America v. David McDavid Nissan, 84 S.W.3d 212, 219 (Tex. 2002), and
because that statute was not effective until September 1, 1997, it does not apply to a
settlement agreement made in February of 1997. Moreover, the issue was not expressly
presented to the trial court by written answer or response. McConnell, 858 S.W.2d at 341. 
Issue two is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. Tex. R. App. P. 47.2(a)
.
3. Tex. Lab. Code Ann. § 401.001 (Vernon Supp. 1998 & 2003) (hereafter the Act).
4. The Commission does not present an issue contending that a genuine issue of
material fact exists and precludes summary judgment. Tex. R. Civ. P. 166a(c).
5. Although represented by counsel in the trial court, Everett did not file a notice of
appeal.
6. A motion for summary judgment should "state the specific grounds" for the motion.
Tex. R. Civ. P. 166a (c).



 agreed with
Matlock’s analysis that Appellant was the driver at the time of the accident. Lovett also
cited McLaurin’s autopsy report as evidence that her injuries were consistent with her being
a passenger, i.e. patterned injuries that could only have come from the seat belt hanger
and/or door latch on the passenger side. In addition, the wreckage indicated that the only
exit from which McLaurin could have been ejected prior to the collision was the passenger
window. Lovett also testified Appellant’s intoxication combined with the speed of the
vehicle caused the accident that claimed McLaurin’s life. 
          John Bundy, a forensic scientist in the DPS Trace section specializing in shoe prints,
tested the Camaro’s brake and accelerator pedals for shoe prints. Using oblique lighting
and alternative lighting, Bundy was able to detect a dust impression on the brake pedal
identical to the tread design on Appellant’s shoes. He testified the dust impression was
very fragile and could be easily obliterated by an overlapping impression or someone else
putting their foot on the brake. He found nothing on either the gas or brake pedal similar
to the pattern on McLaurin’s sandals. However, without the presence of accidentals, i.e.
microscopic scratches, stone holes, or nicks making the pattern unique, he could not testify
that the shoe print on the brake pedal was, in fact, made by Appellant’s shoe. 
          Thomas Beaver, forensic pathologist and Chief Medical Examiner in Lubbock,
opined that in the period of time between 11:30 p.m. and 6:30 a.m., Appellant’s stomach
would have emptied its contents completely and Appellant would have been in a post-absorptive stage. Beaver testified that whenever a person is in a post-absorptive stage
their liver begins to eliminate alcohol from the blood, thereby causing their BAC to fall over
time. The range established for individuals to metabolize alcohol on an hourly basis is
generally considered to be .015 to .025 per hour depending on a number of factors such
as body size and metabolic rate. Based on this information, Beaver concluded that
because Appellant was in a post-absorptive stage with a BAC of .098 at 6:30 a.m., he
would have had a higher BAC at an earlier time. 
          Beaver also agreed with Matlock and Lovett that McLaurin was seated in the
passenger seat at the time of the wreck. He testified her cause of death was multiple
trauma consistent with her being a passenger. The most important factor for Beaver was
her spinal fractures which he described as a “hallmark of being ejected from the vehicle.” 
He also testified McLaurin’s BAC was .032 and she had two hundred fifty milliliters of urine
in her bladder. He considered this amount of urine to fill at least half the capacity of her
bladder which would have prompted her to empty her bladder. Once started, he opined
it would have been difficult for her to stop urinating because her bladder was distended at
two hundred fifty milliliters. A person might be able to stop at fifty or twenty-five milliliters
but, at two hundred fifty milliliters, the bladder would want to continue emptying. He further
opined that, typically, he would not expect to see that much urine in her body at time of
death. 
Discussion
          Appellant contends the State’s evidence at trial was legally insufficient to prove he
was intoxicated at the time of the accident under either an impairment or per se theory of
intoxication. Alternatively, he asserts the evidence is factually insufficient to support his
conviction.


 Finally, Appellant contends the trial court erred in its denial of his motion to
suppress his blood alcohol test results and medical records for treatment administered by
Yoakum County Hospital on August 9 and 10, 2005. He contends their release violated
federal privacy guarantees under the Health Insurance Portability and Accountability Act
of 1996 (HIPAA).


 Logic dictates we consider Appellant’s third issue regarding the
suppression of evidence first–before we determine the legal and factual sufficiency of the
evidence. 
          I. Motion to Suppress
          Appellant contends the trial court erred by permitting the State to put into evidence
his medical records and blood alcohol test results obtained pursuant to a subpoena duces
tecum issued to the custodian of records at the Yoakum County Hospital. Appellant
asserts the evidence was obtained in violation of HIPAA’s Privacy Rule because the
subpoena was neither a grand jury subpoena nor a subpoena issued by a judicial officer. 
See 45 C.F.R. § 164.512(f)(1)(ii) (2008).



          There is no Fourth Amendment reasonable expectation of privacy protecting blood
alcohol test results from tests taken by hospital personnel solely for medical purposes after
a traffic accident. State v. Hardy, 963 S.W.2d 516, 527 (Tex.Crim.App. 1997). The Hardy
rule applies in instances where the accused challenges the State’s use of his or her
medical records at trial due to an alleged HIPAA violation. See Murray v. State, 245
S.W.3d 37, 42 (Tex.App.–Austin 2007, pet. filed); Tapp v. State, 108 S.W.3d 459, 461-62
(Tex.App.–Houston 2003, pet. ref’d). Because Appellant has no constitutional or statutory
reasonable expectation of privacy with respect to blood alcohol test results obtained solely
for medical purposes following an accident, he has no standing to complain that the State
obtained his medical records in violation of HIPAA. See Ramos v. State, 124 S.W.3d 326,
338-39 (Tex.App.–Fort Worth 2003, pet. ref’d). 
          We are mindful that a “standard, requirement or implementation specification”
adopted under the Privacy Rule generally preempts contrary state laws. Murray, 245
S.W.3d at 42 (citing 45 C.F.R. § 160.203). Nevertheless, we are constrained to follow
existing law under Hardy absent any guidance or instructions to the contrary from the Court
of Criminal Appeals. Id.; Tapp, 108 S.W.3d at 463. That said, HIPAA requirements for
disclosure conform with the holding in Hardy as follows:
A covered health care provider providing emergency health care in response
to a medical emergency . . . may disclose protected health care information
to a law enforcement official if such disclosure appears necessary to alert
law enforcement to: (A) The commission and nature of a crime; (B) The
location of such crime or of the victim(s) of such crime; and (C) The identity,
description, and location of the perpetrator of such crime.
 
45 C.F.R. § 164.512(f)(6)(I).
 
          Moreover, under the provision relied upon by Appellant, his medical information was
also properly disclosed per the subpoena duces tecum. Under § 164.512(f)(1)(i), a
covered entity may disclose protected health information for law enforcement purposes to 
a law enforcement official if the disclosure is “[p]ursuant to process”


 and is as “required
by law.”


 Here, the subpoena was issued at the request of the Criminal District Attorney
for law enforcement purposes. The subpoena required the custodian of records to appear
in the 121st District Court with the requested documents, and non-compliance was subject
to a fine not exceeding five hundred dollars. See also Tex. Code Crim. Proc. Ann. arts.
24.01-06 (Vernon Supp. 2007). Accordingly, because the trial court committed no error
in admitting Appellant’s medical information, issue three is overruled.  
          II.       Legal Sufficiency of the Evidence
          When conducting a legal sufficiency review of the evidence to support a criminal
conviction, we view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). We do
not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any
witnesses, as this is the function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735,
740 (Tex.Crim.App. 1999). Instead, we determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted at trial in the
light most favorable to the adjudication. Adelman v. State, 828 S.W.2d 418, 422
(Tex.Crim.App. 1992). In so doing, we resolve any inconsistencies in the evidence in favor
of the adjudication. Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
          Each fact need not point directly and independently to the guilt of the appellant, as
long as the cumulative force of all the incriminating circumstances is sufficient to warrant
the conviction. Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Circumstantial
evidence is as probative as direct evidence in establishing an accused’s guilt, and
circumstantial evidence alone can be sufficient. Id. On appeal, the same standard of
review is used for both circumstantial and direct evidence cases. Id. 
          A person commits the offense of intoxication manslaughter if the person: (1)
operates a motor vehicle in a public place; (2) is intoxicated, and (3) by reason of that
intoxication, (4) causes the death of another by accident or mistake. Tex. Penal Code Ann.
§ 49.08(a) (Vernon Supp. 2007). A person is considered “intoxicated” if the person: (1)
does not have the normal use of their mental or physical faculties by reason of the
introduction of alcohol into the body; or (2) has an alcohol concentration of 0.08 or more. 
Tex. Penal Code Ann. § 49.01(2) (Vernon 2003). Thus, there are two alternative means
or theories by which the State can prove intoxication, i.e. impairment of the use of normal
mental or physical faculties and/or per se. Bagheri v. State, 119 S.W.3d 755, 762
(Tex.Crim.App. 2003). 
          Evidence of the appellant’s appearance, condition, and actions; Mercer v. State, 143
Tex. Crim. 196, 157 S.W.2d 919, 920 (1941), the manner in which the appellant managed
his vehicle; Sanchez v. State, 398 S.W.2d 117 (Tex.Crim.App. 1966)(speed prior to
collision probative); Allen v. State, 149 Tex. Crim. 612, 197 S.W.2d 1013 (1946)(speed and
force of collision relevant); Allcott v. State, 158 S.W.3d 73, 75 (Tex.App.–Houston [14th
Dist.] 2005, no pet.), and the victim’s injuries; Etheridge v. State, 903 S.W.2d 1, 14
(Tex.Crim.App. 1994), may comprise circumstantial evidence of the fact of intoxication and
a causal connection with the death of the deceased. 
          Taken in the light most favorable to the verdict, the evidence at trial showed
Appellant was drinking prior to the accident, was behaving in an irrational and threatening
way, and he drove away from the Western Bar in a reckless manner. When the accident
occurred,


 Appellant was driving


 at more than one hundred thirteen miles per hour and he
lost control of his vehicle on a straight stretch of roadway with no obstructions. His vehicle
left the roadway and became airborne ultimately striking a utility pole on the passenger
side. The victim was ejected from the passenger side of the vehicle. As a result of the
accident, McLaurin sustained severe injuries resulting in her death.
          Approximately seven hours after the accident, Appellant tested over the legal limit
for alcohol consumption with a .098 BAC. EMT Traweek testified Appellant smelled of
alcoholic beverage and was very agitated, not normal, distraught, crying, and believed
Appellant’s behavior exhibited “an altered state of consciousness.” An hour later at the
Emergency Room, the ER doctor noticed Appellant smelled as if he were drunk, ordered
blood tests, and treated him for alcohol abuse in addition to minor injuries. Approximately,
two hours later, Appellant continued to emit a strong odor of alcohol. Based upon the
evidence of his drinking, erratic behavior, and reckless driving prior to the accident, the
extreme recklessness with which the accident occurred, the damage to the vehicle, the
victim’s injuries, and the post-accident aroma of alcohol on Appellant’s person, the jury
could have inferred and rationally found that Appellant operated a motor vehicle in a public
place while intoxicated, and that by reason of that intoxication caused the death of another
by accident or mistake. See Hale v. State, 194 S.W.3d 39, 40 (Tex.App.–Texarkana 2006,
no pet.)(driving while intoxicated at a high rate of speed cannot possibly be characterized
as being insufficient conduct to cause an accident); Martinez v. State, 66 S.W.3d 467, 470
(Tex.App.–Houston [1st Dist.] 2001, pet. ref’d). 
          Moreover, Appellant’s appearance and blood alcohol test, although taken hours
after the accident occurred, tend to make it more probable that he was intoxicated at the
time of the collision because they provided evidence that he had introduced alcohol into
the body prior to the accident. See Stewart, 129 S.W.3d at 96-97. In the absence of any
evidence Appellant consumed alcohol after leaving the Western Bar or following the
accident, Appellant’s intoxicated state at the time his blood was taken by EMT Traweek at
6:30 a.m. on Monday could only have arisen from drinking prior to his departure from the
Western Bar at 10:50 p.m. on Sunday. Thus, it follows that Appellant must have been
intoxicated within the time periods which included the time the accident occurred. See
Zavala v. State, 89 S.W.3d 134, 140 (Tex.App.–Corpus Christi 2002, no pet.); Purvis v.
State, 4 S.W.3d 118, 119, 121-22 (Tex.App.--Waco 1999, no pet.).  
          Appellant’s reliance on Leal v. State, 170 Tex. Crim. 71, 338 S.W.2d 443 (1960),
is misplaced. In Leal, appellant struck a motorcyclist around 8:00 a.m. after eating and
drinking at an establishment until 5:30 - 6:00 a.m. Witnesses at the accident scene
indicated appellant was not intoxicated, did not smell of alcoholic beverage, and could not
testify when appellant had been drinking. Id. at 443-444. A urine specimen taken at 9:35
a.m. yielded a BAC of .12. Id. at 445. A chemist testified “[i]t would be possible . . . for an
individual whose urine showed .15 alcohol to have as little as .04 percent alcohol in his
blood, at which level no person is intoxicated.” Id. The Court also described the expert
testimony as equivocal indicating appellant was “probably intoxicated,” or “had been
drinking,” or was a “border line” case of intoxication. Id. at 446. Based upon the evidence,
the Leal Court held that the State’s evidence was legally insufficient to show appellant was
intoxicated at the time of the collision. Id.
          Here, unlike Leal, there is evidence of drinking, irrational and threatening behavior,
and reckless driving before the accident. Unlike Leal, there is also evidence Appellant’s
driving was extremely reckless prior to the collision with the utility pole, damage to the
vehicle was substantial, and the victim’s injuries were numerous and fatal. Hours
afterwards, in the absence of any evidence indicating Appellant ingested any alcoholic
beverage since leaving the bar, Appellant’s BAC was .098 and he smelled of alcohol. 
Later yet, he continued to smell strongly of alcohol. Furthermore, unlike Leal, the State’s
expert evidence on intoxication in this case was not equivocal. Thus, Leal is inapposite. 
           Accordingly, we find that a factfinder could reasonably have found Appellant
operated his motor vehicle at a time when he did not have the “normal use” of his mental
or physical faculties or when he had an alcohol concentration of .08 or more and, “but for”
his intoxication, the victim’s death would not have occurred. Appellant’s first issue is
overruled.
III.      Factual Sufficiency of the Evidence
          When conducting a factual sufficiency review, we examine all the evidence in a
neutral light and determine whether the trier of fact was rationally justified in finding guilt
beyond a reasonable doubt. Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App.), cert.
denied, ___ U.S. ___,128 S.Ct. 282, 76 U.S.L.W. 3165 (2007); Watson v. State, 204 S.W.
3d 404, 415 (Tex.Crim.App. 2006). We are to give deference to the factfinder’s
determination if supported by the record, and cannot reverse a conviction unless we find
some objective basis in the record that demonstrates that the great weight and
preponderance of the evidence contradicts the verdict. Id. at 417. The criminal verdict will
be set aside “only if the evidence is so weak that the verdict is clearly wrong and manifestly
unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable
doubt could not have been met.” Garza v. State, 213 S.W.3d 338, 343 (Tex.Crim.App.
2007). In addition, we must include a discussion of the most important evidence that the
appellant claims undermines the verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).
          Appellant contends the evidence is factually insufficient to support his conviction
because: (1) his BAC of .098 was an unreliable indicator of intoxication because the blood
sample was obtained seven hours after the accident; (2) Rubio testified he was not
intoxicated when he drove away from the Western Bar; (3) he scored well on the Glasgow
Coma test near to the time his blood sample was taken; and (4) EMT Traweek
contaminated his blood sample by wiping Appellant’s arm with an alcohol wipe prior to
taking the blood sample. Appellant also asserts the State’s evidence of intoxication at the
time of the accident was insufficient because the State did not produce an expert who
could reliably quantify Appellant’s BAC at the time of the accident by retrograde
extrapolation


 due to unknown variables. Additionally, Appellant asserts that the results
of the blood test may have been skewed if he were in an absorption stage. 
          The BAC results of the blood draw taken by EMT Traweek are probative of
Appellant’s intoxication at the time of the accident even in the absence of any retrograde
extrapolation. State v. Melcher, 153 S.W.3d 435, 440 (Tex.Crim.App. 2005); Stewart v.
State, 129 S.W.3d 93, 97 (Tex.Crim.App. 2004); Letner v. State, 138 S.W.3d 539, 541
(Tex.App.–Beaumont 2004, no pet.). Furthermore, under an impairment theory, the State
need not prove the defendant’s exact BAC at the time of the accident. See Jackson v.
State, 50 S.W.3d 579, 588 (Tex.App.–Fort Worth 2001, pet. ref’d). 
          The State’s expert, Beaver, acknowledged the difficulties in conducting a retrograde
extrapolation due to the time-lag between when the accident occurred and Appellant’s
blood draw for testing purposes. Nevertheless, he did testify that, while he could not give
an exact measurement of Appellant’s BAC at the time of the accident, he was comfortable
opining that, if a person had a blood alcohol level of .098 at 6:30 a.m., that person’s BAC
would have been higher still at an earlier time. He indicated that, while it was difficult to
assign a specific number to the increase in BAC, he didn’t believe anyone would disagree
with a range of .015 to .025 per hour. Menon, the ER doctor who treated Appellant, also
testified that Appellant’s blood alcohol level would have been higher at the time of the
accident based upon a standard measurement used by internists in the Emergency Room. 
Appellant offered no evidence to rebut these opinions.
          Beaver also testified that too many hours had passed between the estimated time
of the accident, 11:30 p.m. on Sunday, and the time of the blood draw the next morning, 
6:30 a.m. on Monday, for Appellant to be in an absorptive stage. In fact, he testified there
was “no chance.” He further testified that, given this passage of time, Appellant had to be
“post-absorptive, which means that his blood alcohol has to be falling over time.” Appellant
offered no evidence to rebut these opinions. If Appellant had produced evidence showing
his BAC actually increased or of factors that could lead to that result, “the question of lag-time between driving and the test becomes a matter to be weighed by the jury.” Garcia v.
State, 112 S.W.3d 839, 851 (Tex.App.–Houston [14th Dist.] 2003, no pet.). Given the
State’s evidence in support of the jury’s finding that Appellant was intoxicated at the time
of the accident and the absence of evidence in rebuttal by Appellant, we cannot say the
verdict is clearly wrong or manifestly unjust.
          Neither does Rubio’s testimony indicating Appellant was not intoxicated when he
left the Western Bar, EMT Traweek’s wiping of Appellant’s arm with an alcohol wipe prior
to taking the blood sample, and/or Appellant’s score on the Glasgow Coma test near to the
time his blood sample was taken, constitute a “great weight or preponderance of evidence”
in contradiction of the jury’s verdict. Jurors being the exclusive judges of the facts and
weight to be given testimony were free to believe the State’s witnesses and evidence rather
than Rubio or the results of Appellant’s Glasgow Coma test on the issue of Appellant’s
intoxicated state. See Matula v. State, 972 S.W.2d 891, 893 (Tex.App.–Corpus Christi
1998, no pet.). 
          Furthermore, the use of a cleansing solution containing alcohol in connection with
a blood test is merely a factor to be weighed by the jury. Kaufman v. State, 632 S.W.2d
685, 687-88 (Tex.App.–Eastland 1982, pet. ref’d). Although Matlock testified that it was
not his practice to use alcohol preps or swabs when taking a blood draw, Traweek testified
that the alcohol from the wipe would have evaporated prior to the needle being inserted
for the blood draw. Beaver corroborated Traweek’s testimony and opined that the alcohol
swipe would not affect the accuracy of the test. Thus, we defer to the factfinder since the
determination is supported by the record.
          Accordingly, we find that the evidence was factually sufficient because the verdict
was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Because the evidence was factually sufficient to support a finding that Appellant’s
intoxication caused the victim’s death, we overrule his second issue as well. Conclusion
 
          Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.
 
 
                                                                                      Patrick A. Pirtle                                                                                                  Justice 
 
Publish.